**GULF STATES UTILITIES CO. v. STATE.**

No. 7666.

Court of Civil Appeals of Texas. Austin.

Jan. 13, 1932.

Rehearing Denied Feb. 10, 1932.

Baker, Botts, Andrews & Wharton and Palmer Hutcheson, all of Houston, for appellant.

James V. Allred, Atty. Gen., and Sidney Benbow and Everett L. Looney, Asst. Attys. Gen., for the State.

Templeton, Brooks, Napier & Brown and W. L. Matthews, all of San Antonio, amicus curiæ.

BLAIR, J.

Appellee, the state of Texas, sued appellant, Gulf Utilities Company, for its franchise tax due for the year 1930; and recovered judgment for $23,112; hence this appeal.

The primary question in the appeal is whether, in absence of a legislative enactment, the manufacture and sale of ice to the public in Texas by appellant constituted it a public utility corporation or business. A decision of the question is necessary for the purpose of determining the particular subdivision of the Franchise Tax Act under which the amount of appellant's franchise tax for the year in question should be computed.

The state demanded that appellant pay the franchise tax imposed by subdivision (a) of article 7084, as amended by Acts 5th Called Session, 41st Legislature (1930), p. 220, c. 68, § 2, the material portion of which reads as follows: "Except as herein provided, every domestic * * * corporation shall * * * pay * * * a franchise tax * * * based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business."

Appellant contended that ice had grown to be a commodity needed and used by the public so generally that it had become a public necessity, and that its business of manufacturing and selling ice to the public in Texas was therefore a public utility business, and entitled to classification under the Franchise Tax Act as a "public utility corporation," and

to pay the lower franchise tax imposed by subdivision (d) of said article 7084, the material portion of which reads as follows: "Except as provided in preceding clauses 'B' and 'C', all public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or service is regulated, or subject to regulation, in whole or in part, by law, shall pay a franchise tax as provided in this Act, except the same shall be based on that proportion of the issued and outstanding capital stock, surplus, and undivided profits, which the gross receipts of the business of said corporation done in this State bears to its total gross receipts, instead of the gross assets; and in lieu of the rate hereinbefore prescribed said tax shall be computed as follows."

Appellant was incorporated under what is now subdivision 88 of article 1302, R. S. 1925, to conduct the following businesses:

"[1] The supply of water to the public for irrigation, power, municipal or domestic purposes.

"[2] The manufacture of and supply of ice to the public.

"[3] The generation of and supply of gas, electric light and motor power to the public."

Appellant has never engaged in the gas business in Texas, but has engaged in each of the other businesses authorized by its charter, and was still so engaged on the date of the judgment.

By legislative enactment two of appellant's businesses, those conducted under subdivisions (1) and (3) of its charter, have been declared to be public utility businesses. Chapter 10, title 32, R. S. 1925 (article 1416 et seq.). There has never been enacted in Texas a statute declaring the manufacture and sale of ice to be a public utility business, and the Forty-First and Forty-Second Legislatures refused to enact such a statute and to confer authority upon the Railroad Commission to regulate the ice business.

It is conceded that the business of manufacturing and vending of ice to the public in Texas was not in its incipiency a public utility. The trial court found from the evidence adduced that "ice is a commodity needed and used by the public; but ice is not a public necessity, and is not indispensable."

It is appellant's contention that the court erred in refusing to find as a matter of law that ice has risen to be a commodity so generally needed and used by the public that it has become a public necessity in Texas, like in effect to gas, electric power, and water, and that therefore appellant's business of manufacturing and selling ice to the public in Texas is entitled to classification as a "public utility whose rates or service is regulated, or subject to regulation, in whole or in part, by law," under subdivision (d) of the Franchise Tax Act; and particularly because of the growth, expense of maintaining permanent manufacturing plants, standardization of the commodity, magnitude, and number of people affected by the ice business, both as to quality of the commodity and as to regular and daily service to the domestic consumers of ice, the business is subject to regulation by law.

■ We have reached the conclusion that appellant's contentions cannot be sustained. The climatic conditions in Texas are such that there are no natural ice businesses, but all ice sold to the public is artificial ice manufactured of frozen water. Appellant has artificial ice manufacturing plants in several towns and cities where it manufactures and sells ice to the public, and also ships and sells ice to the public in several towns within a radius of 15 to 50 miles from its plants. The artificial ice business of appellant is subject to competition at all places where it does business, and there is actual competition in some of these places. In recent years an electrical invention was put upon the market for refrigeration purposes and for manufacturing of ice in the household and in business enterprises, which is in competition with the artificial ice business, and which is shown by the testimony to now be in fairly general use by the public. What is known as dry ice is also in competition with artificial ice to some extent. Appellant and all others similarly engaged in Texas fix their own prices for their artificial ice and control their own service to the public. It is agreed that ice is being sold for as reasonable prices as the public would have to pay under public regulation, or at least the public is now paying, and the manufacturers and vendors are receiving fair prices for ice. There is no evidence in the record which shows that the public, or the portion of it which uses ice, is suffering any inconvenience of health or comfort by reason of the fact that the ice business has not been subjected to some sort of public regulation.

In the case of Ladd v. Southern Cotton Press & Mfg. Co., 53 Tex. 172, our Supreme Court held the policy of this state to be that, in absence of a legislative enactment, a business theretofore strictly juris privati will not become juris publici as a matter of law by reason of its growth, magnitude, or the number of persons affected by it, since the right to control its property, or regulate its use or service, pertains to the legislative and not to the judicial department of the government. See, also, American Livestock Commission Co. v. Chicago Livestock Exchange, 143 Ill. 210, 32 N. E. 274, 282, 18 L. R. A. 190, 36 Am. St. Rep. 385; Richardson v. R. R. Commission, 191 Cal. 716, 218 P. 418. It may be conceded that there are cases in which courts have the right to declare an existing business affected with a public interest and subject to

regulation and control without a regulatory statute, under some branch of the doctrine of the state police power; but in cases like the instant case, where no material inconvenience or injury is resulting to the public health or comfort because of lack of public regulation or control of the ice business, the last-cited cases are authority for the rule that, "it is thought the better procedure for this declaration to come, in the first instance, from the legislature and not from the courts." Thompson on Corporations (3d Ed.) 706, § 508. In practice and policy, the reasons for this rule were well stated in the case of American Livestock Co. v. Chicago Livestock Exchange, supra, as being that, "apart from the consideration that the extension and application of even existing rules of law to subjects not heretofore within their purview is legislative in its nature, the determination by the courts as to the precise point at which a mere private business reaches that stage of growth and expansion which is sufficient to render it juris publici would be surrounded with very great difficulties, and would present questions for which the courts, unaided by legislation, would be able to find no just or satisfactory criterion or test. But when the legislature, acting upon a competent state of facts, has interposed and declared the business to be juris publici, all difficulty is removed." This policy of procedure has been adopted by courts generally and by the Supreme Court of Texas in Ladd v. Southern Cotton Press & Mfg. Co., supra. We therefore conclude that, in absence of a legislative enactment, the manufacture and sale of ice to the public in Texas is not a public utility business as a matter of law.

In deciding the above question, we are not holding that a legislative enactment declaring ice to be a public utility, or that the ice business is affected with the public interest and subject to some character of public regulation, would not be upheld by the courts. No such legislation has been enacted in Texas, and that question need not be determined in this case.

In reaching the above conclusions, we are not unmindful that the tendency of modern times is to bring within the term "public utility" many enterprises or businesses which were formerly considered as strictly private. Nor are we unmindful of the great difficulty under which courts have labored in determining whether a particular business or enterprise has by growth and use become a public utility, because the term has no exact definition in law. The trend of modern decisions is to describe rather than to define a public utility as being a business or service which is engaged in regularly supplying the public with some commodity or service which is of public consequence and need, such as electricity, gas, water, transportation, or telephone or telegraph service. In 51 C. J. 4, it is stated that, "while the term has not been exactly defined, and, as has been said, it would be difficult to construct a definition that would fit every conceivable case, the distinguishing characteristic of a public utility is the devotion of private property by the owner or person in control thereof to such a use that the public generally, or a part of the public, which has been served and has accepted service, has the right to demand that the use or service, so long as it is continued, shall be conducted with reasonable efficiency and under proper charges." Thompson on Corporations (3d Ed.) vol. 1, p. 605, states that the term "public utility" applies to or describes a business "when the owner of the property devotes it to a use in which the public has an interest, he thereby, in effect grants to the public an interest in such use, and does to the extent of that interest, submit his property to be controlled by the public for the common good as long as such interest is maintained." To the same effect is Wolff Packing Co. v. Industrial Court, 267 U. S. 552, 45 S. Ct. 441, 69 L. Ed. 785, relied upon by appellant. See, also, as leading cases, Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Chicago, etc., Ry. v. Iowa, 94 U. S. 155, 24 L. Ed. 94; Stoehr v. Natatorium Co., 34 Idaho, 217, 200 P. 132; People v. Forest Home Cemetery, 258 Ill. 36, 101 N. E. 219, L. R. A. 1917B, 946, Ann. Cas. 1914B, 277.

An analysis of these authorities and of all authorities cited by appellant on the questions above decided shows that they deal with the reasonableness or constitutionality of statutes which declare certain businesses, including the ice business, to be public utilities, or to be affected with the public interest and subject to some sort of public regulation; or they deal with the question of what character of business is affected with the public interest to the extent that a state or municipality may engage in such businesses under a legislative enactment. And in upholding such statutes or regulatory measures the modern trend of decisions is to be very liberal, and seems to declare that almost any private business is affected with the public interest. Or, as stated in Wolff Co. v. Court of Industrial Relations of State of Kansas, 262 U. S. 522, 43 S. Ct. 630, 633, 67 L. Ed. 1103, 27 A. L. R. 1280: "In the latter, the use for which the tax is laid may be any purpose in which the state may engage and this covers almost any private business if the Legislature thinks the state's engagement in it will help the general public and is willing to pay the cost of the plant and incur the expense of operation."

We think, however, that these decisions are not authority for the primary question in this appeal of whether, in absence of a legislative enactment and under the facts above

stated, the manufacture and sale of ice to the public in Texas is a public utility business as a matter of law. Nor do they in any manner militate against the salutary rule adopted by the Supreme Court in Ladd v. S. C. P. Co., supra, that, in absence of a legislative enactment, the courts will not declare a business strictly private to have become juris publici as a matter of law by reason of its growth and magnitude, and because it had become affected with the public interest. It is true that in discussing the legality of the statutes involved some of these decisions used expressions to the effect that ice is a public necessity, and of which fact courts will take judicial notice; and these expressions are cited by appellant as authority for its contentions that ice is a household necessity of which courts will take judicial notice, and that the ice business is therefore a public utility business as a matter of law and without the aid of any legislative enactment. In further support of these contentions, appellant especially relies upon the cases of City of Denton v. Denton Home Ice Co. (Tex. Com. App.) 18 S.W.(2d) 606; Id., 119 Tex. 193, 27 S.W.(2d) 119, 68 A. L. R. 866; Oklahoma Light & Power Co. v. Corporation Commission, 96 Okl. 19, 220 P. 54, 58; and Consumers' Light & Power Co. v. Phipps, 120 Okl. 223, 251 P. 63. In the City of Denton Case the Commission of Appeals held in its original opinion [18 S.W.(2d) 606] that the manufacture and sale of ice to the public in Texas was a public utility business; but on rehearing that opinion was withdrawn, and it was held [119 Tex. 193, 27 S.W.(2d) 119, 68 A. L. R. 866] that it was not necessary "to decide whether ice is a public utility within the common acceptation or meaning of that term." The court was dealing in that case with the question of whether the ice business is so affected with the public interest that a municipality may engage in manufacturing ice under a legislative enactment which authorized a municipality to manufacture "anything * * * that may be needed or used by the public." The court merely held that ice was a thing needed and used by the public, and that the city of Denton might manufacture it under the legislative enactment. That case is therefore not authority for the contentions here made. Nor is there any Supreme Court decision in this state holding that private corporations incorporated under the laws of Texas for the purpose of manufacturing and selling ice to the public are public utility corporations. The status of Courts of Civil Appeals' decisions on the question seems to be as follows:

In the case of Houston Ice, etc., Co. v. Clint (Tex. Civ. App.) 159 S. W. 409, 411, the question was the priority of the receiver's costs and expenses for the operation of a company known as "the Ice & Gin Company of Harlingen, Tex.," and the property involved was ice manufacturing equipment. In refusing a writ of error (169 S. W. 411), the Supreme Court held that: "This application for writ of error is refused because it does not appear from the facts stated that the Ice & Gin Company of Harlingen was a public corporation," and that it was "therefore not permissible for the court to postpone the prior lien * * * to the expenses and costs of the receivership."

In the case of Gulf Pipe Line Co. v. Lasater (Tex. Civ. App.) 193 S. W. 773, 776, the court held that, while corporations supplying to the people light, ice, water, and power "belong undoubtedly to the class denominated by the statutes of the state as private corporations, courts of this and other states hold that the purposes of their incorporation are such as to clothe them with a quasi public character and subject them to rules to some extent governing public corporations." As to the light, water, and power businesses, the quotation is entirely correct, because the statutes specifically enumerate corporations engaged in these businesses as public utility corporations. And, under the rule that our courts will not, in absence of legislative enactment, declare a private business a public utility merely because it is affected with the public interest, the conclusion that the ice business was affected with the public interest is immaterial. Ladd v. Southern Cotton Press & Mfg. Co., supra.

In the case of Van Valkenburgh v. Ford (Tex. Civ. App.) 207 S. W. 405, 414, it was held that "an ice company is a private corporation. Houston Ice & Brewing Co. v. Clint [Tex. Civ. App.] 159 S. W. 411. It lacks the power of eminent domain and the public has no regulatory interest in the business." In its opinion the court referred to the possible contrary view as expressed in the Gulf Pipe Line v. Lasater Case. The Commission of Appeals, in passing upon the Van Valkenburg Case, 228 S. W. 194, affirmed the judgment on other grounds, but stated that it was not to be understood as approving the above-quoted expression of the Court of Civil Appeals. Such is the status of the question in Texas, and manifestly there is no decision in Texas which holds that private corporations engaged in the ice business are public utility corporations.

Appellant cites the following cases from Oklahoma, Arkansas, Arizona, and Georgia, which hold that statutes or regulatory measures declaring the ice business to be a public utility "affected with the public interest" are valid under the facts stated in the various opinions; or hold that a municipality ice plant manufacturing ice for its inhabitants is within the public purpose act of such municipality: Oklahoma Light & Power Co. v. Corp. Commission, 96 Okl. 19, 220 P. 54, 58; Consumers' Light & Power Co. v. Phipps, 120

Okl. 223, 251 P. 63; City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A. L. R. 828; Bourland Ice Co. v. Franklin Utilities Co., 180 Ark. 770, 22 S.W.(2d) 993, 68 A. L. R. 1018; and Holton v. City of Camilla, 134 Ga. 560, 68 S. E. 472, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199. The Supreme Courts of the states of Missouri and Louisiana seem to have held to the contrary on the latter question in the cases of State ex rel. Kansas City v. Orear, 277 Mo. 303, 210 S. W. 392, and Union Ice Co. v. Ruston, 135 La. 898, 66 So. 262, L. R. A. 1915B, 859, Ann. Cas. 1916C, 1274. It is held that even an express provision in a city charter will not permit a town or city to engage in making and selling ice to the inhabitants thereof, because the constitutional taxing power of such city or town is limited to strictly public purposes.

In this connection it may be noted that it has been the legislative policy of this state to enact regulatory statutes with respect to businesses or enterprises which have by growth and public use become affected with the public interest. This is evidenced by chapter 10, title .32, R. S. 1925, where are listed many businesses or enterprises which by legislative enactment at various times have been declared to be public utilities, and since the 1925 codification of the statutes other businesses or enterprises have been added to the list by legislative enactment. And the Legislature has twice refused to enact statutes declaring the ice business to be a public utility business, and to subject it to statutory regulation.

■ Passing to a consideration of subdivision (d), supra, of the Franchise Tax Act of 1930, we find that it neither expressly nor impliedly includes or classifies for taxing purposes private corporations engaged in the manufacture and sale of ice to the public in Texas as "public utility corporations." Under the language of subdivision (d) only "public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or service is regulated, or subject to regulation, in whole or in part, by law," are included. It is manifest from this language that the Legislature did not intend to include within the statute any corporation which it had not theretofore, or might thereafter, declare to be "by law" a public utility corporation or business. The phrase "every such corporation" is necessarily limited to "all public utility corporations" declared to be such "by law," which means, as applied here, by a legislative enactment. If the language may be regarded as of doubtful meaning in this regard, then we think that such construction is manifestly the intention of the Legislature from its long-continued policy of enacting from time to time declaratory statutes, declaring businesses or enterprises to be public utilities, or to be affected with the public interest, and in subjecting them to some sort of public regulation or control. And especially has this been the practice of the Legislature with respect to businesses or enterprises which were deemed to have by growth and by public need and use become public necessities or utilities. This intention is further manifest from the practical standpoint of collecting the tax. The statute is a tax statute enacted for the purpose of imposing the tax and instructing the administrative officers or departments of the government from what character of corporations they should demand the tax. We hardly think the legislature intended to leave to these officers and departments of government the intricate legal matters of determining what businesses are public utility businesses, or what corporations are public utility corporations, or of determining the matter of what public utility corporations' rates or service are subject to regulation. It is well settled that the forum for declaring a business to be affected with the public interest, and for subjecting its rates or service to regulation, is in the first instance the Legislature, and, until the Legislature has acted, we do not think administrative officials or departments of government can determine the questions. 1 Thompson on Corporations (3d Ed.) p. 1706.

The trial court concluded that the manufacture and sale of ice to the public in Texas by appellant did not constitute it a public utility corporation as to that business, and that appellant was therefore not "engaged solely in the business of a public utility" within the meaning of subdivision (d) of article 7084, supra, and computed the franchise tax due from appellant for the year 1930, under the provisions of subdivision (a) of said article 7084. As the basis for computing the tax, it was agreed that for the year in question the outstanding capital stock of appellant was $13,342,343.27; that the surplus and undivided profits were $965,258.50; that the outstanding notes, bonds, and debentures maturing one year or more from date of issue were $18,000,000; that the total gross earnings and receipts from all sources were $6,603,108.10; that the total gross earnings and receipts from operations in Texas were $5,044,029.28; and that the total Texas receipts from all business of appellant were 76.39 per cent. of all business done by appellant during the year in question. With these figures as the basis, one of the businesses in which appellant was engaged was used for computing the tax, and the amount thus arrived at was multiplied by 3 under the terms of subdivision 88 of article 1302 (the statute under which appellant was incorporated), which provide: "That corporations including more than one of the purposes named in this Article shall pay the franchise tax prescribed by law for each of the purposes so included in their charter or

amendments thereto." The amount of the judgment is admitted to be correct if the trial court selected the right statutes under which to compute the tax. We have reached the conclusion that the trial court has correctly computed the tax due by appellant for the year 1930 under the Franchise Tax Act of 1930.

■ However, by its third assignment of error appellant contends as follows: "The trial court erred in its tabulation of the tax because (if this defendant is not a public utility corporation in its entirety), all of defendants' business except its ice business is public utility business within the meaning of subdivision (d) of Article 7084, as amended in 1930, and the capital of the company devoted to that business should be allocated and taxed as such leaving only the balance of the capital to be taxed under subdivision (a)."

There is no provision in the multiple franchise tax statute, supra, relative to or authorizing the allocation or apportionment of capital between the respective businesses of a corporation entitled under its charter to engage in more than one business. The statute plainly provides that every corporation which enjoys the privilege and benefit of engaging in more than one business under its charter "shall pay the franchise tax prescribed by law" for each of the businesses. Appellant argues that the plan of allocation of capital has heretofore been extended by the secretary of state to corporations engaged in two or more businesses where one businss is subject to the franchise tax and the other businesses are subject only to an occupation or license tax. And further that such allocation plan has been given judicial sanction in the state of Kentucky in the case of Merchants' Ice & Cold Storage Co. v. Commonwealth of Kentucky, 154 Ky. 452, 157 S. W. 717, in which case the court had under consideration the tax liability of a corporation engaged in an ice business and in a cold storage business. The ice business was subject only to a license tax under the laws of Kentucky, while the cold storage business was subject to a franchise tax. The court held that the capital invested in the two lines of business should be segregated, and that the franchise tax should be paid only on the cold storage business capital. However, this plan of allocation of capital was for the purpose of paying different kinds of taxes on different kinds of business classified by legislative enactment for the purpose of paying the different kinds of taxes. It has no application to the franchise tax here involved, because it is imposed on all corporations as such and without regard to the kind of businesses or the purposes of such corporations, and some corporations paying a lower franchise tax solely because they are classified as public utility or other character of corporation by legislative enactment. To be more specific, subdivision (a) of article 7084 classifies for the purpose of paying the franchise tax therein imposed on all corporations not thereinafter given another classification, and, when a corporation is classified under subdivision (a), then under provisions of the multiple tax statute (article 1302), the tax is computed on the entire capital on one business and multiplied by the number of businesses the corporation conducts under its charter. Likewise, if it is determined that a corporation has been by law declared to be a "public utility corporation * * * engaged solely in the business of a public utility," it is classified under subdivision (d), and all of its taxes are computed under subdivision (d) and multiplied by the number of businesses it is privileged to conduct under its charter. We think appellant is in error in its argument that the 1930 Franchise Tax Act classified corporations according to purposes. It is manifest from a reading of the act that subdivision (a) includes corporations which conduct businesses of numerous and varied purposes; that subdivision (b) includes numerous kinds of corporations, and includes a number which are engaged solely in the business of a public utility; and that subdivision (d) includes various kinds of corporations with different businesses or purposes, but a corporation entitled to classification under subdivision (d) must also be "engaged solely in the business of a public utility" as to each and all of its businesses or purposes.

Appellant further contends that the principle of allocation of capital urged by it should have been applied to the Franchise Tax Act of 1930, because the 1931 amendments to the 1930 act expressly so provide. We think that there is nothing in the language of the 1930 act which would authorize any allocation of capital from one business to another for the purpose of designating the capital on which the franchise tax should be paid. An amendment was offered to the 1930 act which had for its purpose the allocation of capital as contended for by appellant, but it failed of enactment. In 1931, the Legislature, by chapter 265, § 1, Acts 42nd Legislature, p. 441, re-enacted article 7084, supra (Vernon's Ann. Civ. St. art. 7084), and its four subdivisions identical in language with the 1930 act, but amended the article by adding thereto subdivisions (e) and (f), which read as follows:

"(e) Corporations engaged partly in the business of a public utility as defined in clause (d) and partly in businesses embraced in clause (a) shall pay the franchise tax in the following manner; as to those businesses which come under clause (a) the tax shall be computed as provided in clause (a) on that proportion of the entire taxable capital under said clause (a) as the Texas gross receipts from such business or businesses bear

to the entire Texas gross receipts of such corporation; and to those businesses which come under clause (d) the tax shall be computed as provided in clause (d) on that proportion of the entire taxable capital under said clause (d) as the Texas gross receipts from such business or businesses bear to the entire Texas gross receipts of such corporation. The period for which such gross receipts are taken shall be the same period used in computing the proportion of Texas taxable capital under clause (a) and (d).

"(f) Corporations which are now required to pay a separate franchise tax for each purpose or business authorized by their charters, shall hereafter pay only the tax provided hereunder for one purpose, and one-fourth (¼) of such amount for each additional purpose named in their charters."

The amending act emergency clause recites as follows: "The fact that the present law requires corporations engaged jointly in the ice, water, light and power business to pay a franchise tax of three or more times the amount paid by corporations engaged solely in the light and power business, creates an emergency and an imperative public necessity," etc.

So, if the language of the 1930 act may be regarded as of doubtful meaning with respect to the allocation of the capital for the purpose of paying the franchise tax imposed, we think that the above amendments and the emergency clause clearly evidence a contrary intention on the part of the Legislature.

It is manifest from the language of these amendments and the emergency clause that the Legislature interpreted the 1930 act as we have done herein, and as classifying corporations engaged in the "ice, water, light and power" business under subdivision (a), and as being required to pay the multiple tax imposed by article 1302, because subdivision (e), supra, provides for the segregation of the business capital for the purpose of thereafter paying the franchise tax on each business, and the emergency clause recites that the amendment was for the purpose of remedying the inequities in this regard as found in the 1930 act, which are the same inequities urged by appellant in support of its above-quoted assignment of error. Western Public Service Co. v. Meharg, 116 Tex. 193, 288 S. W. 141, 292 S. W. 168.

Appellant's fourth assignment of error reads as follows: "The trial court erred in holding the defendant liable to pay three times the normal tax. The multiple franchise tax provided for in subdivision 88 of Article 1302 of the Revised Civil Statutes of 1925 has been repealed by implication, at least so far as it was applicable to corporations coming under any of the classifications set out in the 1930 Franchise Tax Act."

This assignment is based upon the contention of appellant that the 1930 Franchise Tax Act was all-inclusive with respect to levying the tax, providing for its collection, and the manner, rate, and time of computation of the tax; and that, since the multiple tax statute (article 1302) was neither brought forward in the 1930 act nor referred to as being continued in force and effect, it was therefore repealed by implication.

■■ Appellant concedes that, if the multiple tax statute has not been repealed, it is because it can be reconciled with the 1930 act; and that such reconciliation can only result from construing the Multiple Tax Act in the light of the provisions of the 1930 act, as taxing corporations according to their corporate businesses or purposes. We have hereinabove held that the franchise tax is imposed on all corporations as such and without regard to the kind of businesses or purposes of the corporations, and that some corporations pay a lower tax solely because they are classified as public utility corporations, or other character of corporations, by legislative enactment. This holding reconciles the two acts, and we therefore conclude that the Multiple Tax Act was not repealed by implication by the 1930 Franchise Tax Act. A statute will not be repealed by implication, unless it clearly appears that such was the intention of the Legislature. It is evident from the language of subdivision (f), supra, of the act of 1931, amending article 7084 of the act of 1930, that the Legislature did not consider that it had ever repealed the Multiple Tax Act, but at that time continued it in force as amended. This conclusion is indisputable from the language of subdivision (f), which reads as follows: "(f) Corporations which are now required to pay a separate franchise tax for each purpose or business authorized by their charters, shall hereafter pay only the tax provided hereunder for one purpose, and one-fourth (¼) of such amount for each additional purpose named in their charters."

A like amendment was made but failed of enactment to the 1930 act, and article 1302 was therefore left in full force and effect until the enactment of subdivision (f), supra.

■ By its fifth and last assignment of error appellant contends as follows: "The trial court erred in its calculation of the tax because (if the multiple tax provision of Subdivision 88 of Article 1302 has not been repealed by implication), Subdivision 88 of Article 1302 should not in any event be construed to require the tax for each corporate purpose to be calculated at the same rate and on the same basis, when the 1930 law prescribes a separate rate and a separate basis for corporate purposes coming under subdivisions (a), (b), (c) and (d) of the 1930 Act."

In effect, this assignment is covered by appellant's two preceding assignments of

error already discussed. It seems obvious to us that the Franchise Tax Act of 1930, particularly article 7084, did not classify corporations on corporate purposes as such, but solely on corporations as such. In each classification of corporations there was included corporations pursuing various businesses or purposes. The legislative history of the act of 1930 shows that by that act the multiple statute (article 1302) was sought to be amended by providing that corporations required to pay the multiple tax for each charter purpose should thereafter pay for one charter purpose and one-half of such amount for each additional 'charter purpose. This amendment failed of enactment, and article 1302 therefore remained in full force and effect until amended by subdivision (f) of the Acts of 1931, supra, which provides that the tax be computed on one charter purpose and one-fourth of that amount for each additional charter purpose. There were no provisions for allocation of capital in either article 1302 or the Franchise Tax Act of 1930; and we think the case of Western Public Service Co. v. Meharg, 116 Tex. 193, 288 S. W. 141, 292 S. W. 168, is conclusive of the proposition that appellant must pay the multiple tax.

■ It may also be observed that subdivision (d), under which appellant seeks to be taxed, is in the nature of an exception or exemption from the general classification of all corporations under subdivision (a), and under well-settled rules of law the terms of subdivision (d) must be strictly construed against appellant. City of San Antonio v. Y. M. C. A. (Tex. Civ. App.) 285 S. W. 844; City of Houston v. Scottish Rite Ass'n, 111 Tex. 191, 230 S. W. 978, 981; Masonic Temple Ass'n v. Amarillo Independent School Dist. (Tex. Civ. App.) 14 S.W.(2d) 128; Morris v. Lone Star Chapter No. 6, R. A. M., 68 Tex. 702, 5 S. W. 519.

The judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

■ On motion for rehearing, appellant contends for the first time that the construction of the 1930 Franchise Tax Act contended for by the state, and adopted by the trial court and this court, renders the act void as being violative of the equal protection of law clause of the Fourteenth Amendment to the Federal Constitution, in that the result of such construction "is to tax appellant on its capital stock invested in the electric light and power and water businesses at a sum very much in excess of the tax imposed upon other corporations having large outstanding bond issues and carrying on the same type of electric light and power and water businesses, but not the ice business." Appellant further contends in substance as follows:

(1) That no difference has been shown or claimed between its light and power and water businesses and that of any other light and power and water utility which would justify taxing the capital engaged therein on any different basis.

(2) That it is entirely unreasonable to say that, because it owns capital invested in the light and power and water businesses, and also has other capital invested in the ice business, its capital invested in the first-named businesses should be taxed differently from other corporations engaged only in those businesses.

(3) That, however wide the latitude given the state to classify corporations as such for taxing purposes, the basis must be reasonable; and that there is no reasonable basis for the act in question on the ground that appellant is also engaged in the ice business in addition to its public utility businesses.

We have reached the conclusion that these contentions cannot be sustained, for the following reasons:

(1) The record and amicus curiæ briefs filed herein show that in enforcing the act the state is taxing appellant exactly as it is all other corporations engaged in certain businesses which are public utility businesses and also in a business that is not a public utility; and that appellant is paying the same amount of tax imposed by the act upon all corporations engaged in the light, water, and ice businesses.

(2) That the act classifies corporations as such for the purpose of imposing the tax and not as to business purposes.

(3) That there is reasonable basis for the classification, and the act is not unreasonable and unconstitutional because it imposed a higher tax upon corporations engaged in the light, water, and ice businesses than it does upon corporations engaged only in the light and/or water businesses.

In our original opinion, we held that subdivision (a) of the act imposed the higher franchise tax upon every corporation not engaged solely as a public utility; that subdivision (d) imposed the lower tax upon "all public utility corporations * * * engaged solely in the business of a public utility"; that in the absence of legislative enactment, the manufacture and sale of ice to the public in Texas by appellant did not constitute it a public utility corporation or business; that a corporation engaged in the light, water, and ice businesses was not a corporation engaged solely in the business of a public utility within the meaning of the terms of subdivision (d) of the act; and that the act did not authorize corporations engaged partly as public utilities and partly as private businesses to allocate portions of its capital to its public utility businesses, and other portions to its nonpublic utility business as a basis for computing the

amount of the franchise tax due. We still maintain these views.

■ The law is well settled that in levying taxes the state has the power to classify corporations as such, and any reasonable classification will be upheld. Bell's Gap Ry. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Texas Co. v. Stephens, 100 Tex. 628, 103 S. W. 481. That separation for taxation purposes of public utility corporations and nonpublic utility corporations will be upheld. Atlantic Coast Line Ry. Co. v. Doughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051. That likewise statutes classifying and taxing differently different kinds of public utility corporations have been upheld. Puget Sound Power & Light Co. v. King County, 264 U. S. 22, 44 S. Ct. 261, 68 L. Ed. 541. And, in reviewing the very wide discretionary power of the Legislature of the state to classify trades, businesses, corporations, and occupations for taxation purposes, the Supreme Court of the United States in a recent case of State Board of Tax Commissioners of Indiana v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, held as follows:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman, 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann.. Cas. 1917B, 455; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350. As was said in Brown-Forman Co. v. Kentucky, supra, at page 573 of 217 U. S., 30 S. Ct. 578, 580:

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear."

Manifestly there are substantial differences between corporations having the right under their charters to engage in businesses which are public utility businesses and in addition to engage in strictly private businesses, and corporations having the right under their charter to engage solely in the business of a public utility, as follows:

■ First, because the former enjoy at the hands of the state greater privileges and powers than the latter classification of corporations. Clearly a corporation authorized to engage in not only public utility businesses, but also in private business, is given broader privileges and powers than a corporation engaged solely in public utility businesses, Franchise taxes are imposed as consideration for the special privileges granted corporations; and, where one is granted greater privileges than another, it should pay a greater franchise tax for the greater privilege. And, as regards the basis for the legislative classification of corporations in this regard, the difference in the privileges need not be great, just so it is substantial and reasonable; and, where such is the case, it is immaterial that classification may show some inequities or irregularities. State Board of Tax Commissioners of Indiana v. Jackson, supra; Western Public Service Co. v. Meharg, 116 Tex. 193, 288 S. W. 141, 292 S. W. 168.

Second, because the nonutility business of the first above named classification of corporations is not subject to any sort of public regulation or control, while the entire business of corporations engaged solely in the business of public utility is subject to some sort of public regulation or control of their rates or services. It is indisputable that the primary basis for the lower franchise tax in the instant case, as well as in all cases in favor of public utility corporations, is the right of the state to regulate and control them as to their rates or service. This fact alone would authorize the classification made by the act in question, and it is reasonable and founded upon real and substantial differences, because the two classes of corporations are engaged in different businesses, one being engaged in partly a public utility business and partly a private business, while the other one is en-

gaged solely in the business of a public utility, whose rates or service is subject to public regulation or control.

The motion for a rehearing will be overruled.

Overruled.