

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 11, 1952

Hon. Jack Ross
Secretary of State
State of Texas
Austin, Texas

Dear Mr. Ross:

Opinion No. V-1552

Re: The proper section of Article 7084, V.C.S., under which motor bus and motor freight truck corporations should file their franchise tax returns.

You request the opinion of this office upon the question presented in your letter which reads as follows:

"We have a number of motor bus and motor freight truck corporations, ordinarily designated as 'common carriers,' which are operating under certificates of public convenience and necessity issued by the Railroad Commission of Texas. These corporations are required to file a franchise tax return as provided in Article 7089, R.C.S., and pay a franchise tax in accordance with one of the provisions of Article 7084, R.C.S. The question arises as to which classification is proper, 7084 (1) or 7084 (3), in computing the franchise tax due by these corporations.

"In accordance with Article 7084 (1) and (3), R.C.S., as interpreted by your office in Opinion No. O-1331, we have allowed 'common carriers' which are maintaining 'fixed lines and schedules' to file their franchise tax returns as a public utility under Article 7084 (3), R.C.S., thereby avoiding the payment of any tax upon their long term indebtedness as defined in that article. Other 'common carriers' which do not maintain 'fixed lines and schedules' have been required to file their franchise tax return under the provisions of Article 7084 (1), R.C.S., thereby paying franchise taxes upon their long term indebtedness.

"Article 7084 (d) which at the time of the above opinion of your office reads in part as follows: " . . . All public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or service is regulated, or subject to regulation in whole or in part, by law

shall pay a franchise tax as provided in this Act.
. . .' was changed in 1949 to Article 7084 (3). It
now reads as follows: 'All public utility corpora-
tions, which shall include every such corporation
engaged solely in the business of a public utility as
defined by the laws of Texas whose rates or services
are regulated, or subject to regulation in whole or in
part, by law, shall pay a franchise tax as provided in
this Article. . . .' Opinion O-1331 placed authority
on the words 'whose rates or service is regulated, or
subject to regulation in whole or in part' allowing 'com-
mon carriers' to file their franchise tax returns as a
public utility. The 1949 Amendment changed these words
to 'a public utility as defined by the laws of Texas whose
rates or services are regulated. . . .'

"This office respectfully requests that you give
your opinion in view of the above and in the light of
Chapter 10, V.C.S., titled 'Public Utilities', Articles
1416 to 1446, inclusive, defining public utilities and the
opinion of Judge Blair in Gulf States Utility Company vs.
State, 46 S.W.2d 1018, cited in your Opinion O-1331 and
holding that the Legislature must define what corpora-
tions are public utilities, as to whether these 'common
carriers' should file their franchise tax returns under
Article 7084 (1) or as a public utility under Article
7084 (3), regardless of maintaining a 'fixed line and
schedule'."

The basic franchise tax-levying provisions are contained
in Article 7084, V.C.S. It is observed that this statute levies the
tax generally against every domestic and foreign corporation with
exceptions in this language: "(1) Except as herein provided, every
domestic and foreign corporation heretofore or hereafter chartered
or authorized to do business in Texas, or doing business in Texas,
shall, on or before May first of each year, pay in advance to the
Secretary of State a franchise tax for the year following, based up-
on . . ." Then follows the formula for the measurement of the tax.

Following this general statement of the measurement of
the tax there are provided certain exceptions and modifications of
the tax rate for certain types of corporations. For example, Clause
(2) provides for a tax equal to one-fifth of the general levy on cor-
porations required by law to pay an intangible assets tax except
corporations enjoying the use of the public highways by virtue of a
certificate of public convenience and necessity granted by the Rail-
road Commission of Texas and Clause (3) provides a special meas-
urement for the computation of the tax upon public utility corpora-
tions which is in this language: "Except as provided in preceding

Clause (2), all public utility corporations, which shall include every such corporation engaged solely in the business of a public utility <u>as defined by the laws of Texas</u> whose rates or services are regulated, or subject to a regulation in whole or in part, by law, shall pay a franchise tax as provided in this Article, except the same shall be based on that proportion of the issued and outstanding capital stock, surplus, and undivided profits, which the gross receipts of the business of said corporation done in this State bear to its total gross receipts instead of the gross assets; and in lieu of the rate hereinbefore prescribed said tax shall be computed on the basis of One Dollar and Twenty-five Cents ($1.25) per One Thousand Dollars ($1,000) or fractional part thereof."

You present the question of whether or not motor bus and motor freight truck corporations which are required by law to secure from the Railroad Commission a certificate of convenience and necessity and are designated as "common carriers" are required to pay a franchise tax as provided for the general levy in Clause (1) of Article 7084, V.C.S., or Clause (3) of said article applicable to public utility corporations.

To answer this question we must first determine whether motor carriers commonly designated as common carriers are public utility corporations as provided in the taxing statute. It is significant to note that prior to 1949, Clause (d) of Article 7084, V.C.S., which is now Clause (3) of said article, provided as follows: " . . . all public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or services are regulated, or subject to regulation in whole or in part, by law, shall pay a franchise tax as provided in this Article . . ." The comparable provision in the present act is Clause (3), changed in 1949 by an amendment to Article 7084, V.C.S., which now reads as follows: " . . . all public utility corporations, which shall include every such corporation engaged solely in the business of a <u>public utility as defined by the laws of Texas</u> whose rates or services are regulated, or subject to a regulation in whole or in part, by law, shall pay a franchise tax as provided in this Article . . ."

There is a marked distinction between the language of the act prior to the 1949 amendment and that inserted by the Legislature in the 1949 amendment and we must assume that the Legislature had a very definite purpose in making this change. We think this purpose is obvious. The Legislature sought to make certain that only those corporations which were <u>by law defined by</u> the Legislature to be public utility corporations <u>would</u> be entitled to have their franchise tax measured under the terms of Clause

348

(3) of the act instead of Clause (1). The term "by the laws of Texas" means by statutory definition or classification. This is the holding of the court in the case of Gulf States Utilities Company v. State, 46 S.W.2d 1018 (Tex.Civ.App. 1932, error ref.). In this case, the question was whether or not the manufacture of ice constituted a public utility entitled to pay franchise taxes as such. The court, after discussing the general aspects of a public utility under general law, held in effect that it was a matter for legislative determination and in the absence of a statute designating or classifying a corporation as a public utility, it could reap no benefit under the section of the statute applicable to public utilities. This is manifest by the following quotation from the case:

> "Passing to a consideration of subdivision (d), supra, of the Franchise Tax Act of 1930, we find that it neither expressly nor impliedly includes or classifies for taxing purposes private corporations engaged in the manufacture and sale of ice to the public in Texas as 'public utility corporations.' Under the language of subdivision (d) only 'public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or service is regulated, or subject to regulation, in whole or in part, by law,' are included. It is manifest from this language that the Legislature did not intend to include within the statute any corporation which it had not theretofore, or might thereafter, declare to be 'by law' a public utility corporation or business. The phrase 'every such corporation' is necessarily limited to 'all public utility corporations' declared to be such 'by law,' which means, as applied here, by a legislative enactment. If the language may be regarded as of doubtful meaning in this regard, then we think that such construction is manifestly the intention of the Legislature from its long-continued policy of enacting from time to time declaratory statutes, declaring businesses or enterprises to be public utilities, or to be affected with the public interest, and in subjecting them to some sort of public regulation or control. And especially has this been the practice of the Legislature with respect to businesses or enterprises which were deemed to have by growth and by public need and use become public necessities or utilities. This intention is further manifest from the practical standpoint of collecting the tax. The statute is a tax statute enacted for the purpose of imposing the tax and instructing the administrative officers or departments of the govern-

ment from what character of corporations they should demand the tax. We hardly think the legislature intended to leave to these officers and departments of government the intricate legal matters of determining what businesses are public utility businesses, or what corporations are public utility corporations, or of determining the matter of what public utility corporations' rates or service are subject to regulation. It is well settled that the forum for declaring a business to be affected with the public interest, and for subjecting its rates or service to regulation, is in the first instance the Legislature, and, until the Legislature has acted, we do not think administrative officials or departments of government can determine the questions."

This case was decided prior to 1949 and hence prior to the 1949 amendment. We think the 1949 amendment by the Legislature does nothing more than to definitely confirm the decision in the Gulf States Utilities Company case to the effect that the designation or classification as a public utility must be by statute, thus relieving the Secretary of State of the intricate legal matters of determining what corporations are public utilities within the purview of this statute.

There are certain statutory provisions which define public utilities generally. These are embodied in Articles 1416 to 1446, inclusive, V.C.S. Also, Article 6050, V.C.S., classifies gas pipeline corporations as public utilities. A careful search, however, of all the pertinent statutory provisions pertaining to motor bus and trucking corporations, although subjected to regulation by the Railroad Commission, nowhere defines or classifies these corporations as public utilities. In the absence of a statute designating these corporations as public utilities or classifying them as such, we think they should be classified as corporations subject to and required to pay the tax imposed by Clause (1) of Article 7084, V.C.S., and not by Clause (3) of said article applicable to corporations that are public utilities.

Attorney General's Opinion O-1331 (1939) was based primarily upon that portion of the statute which then read "whose rates or service is regulated or subject to regulation in whole or in part," as justifying the classification as public utilities of motor busses and motor trucks whose operations were regulated by the Railroad Commission. We think the 1949 amendment which added the further condition that they be classified or defined as such by the laws of Texas limits the application of the special consideration accorded public utility corporations to only those which the Legislature has chosen by statute to designate or classify as public utilities. Since the Legislature has not by statute


classified motor busses and motor carriers as public utilities, we have no authority to do so by implication. Mere regulation by the Railroad Commission as authorized by law is not sufficient. To hold that regulation alone was sufficient would, in our view, nullify and render meaningless the 1949 amendment which provided that such a public utility in order to reap the benefits of the lower tax that would result in the application of the measurement of tax as provided in Clause (3) of Article 7084, V.C.S., must be designated or classified as such by statute or legislative action. You are, therefore, respectfully advised that it is our opinion that motor bus and motor freight truck corporations ordinarily designated as common carriers are subject to and required to pay a franchise tax under Clause (1) of Article 7084, V.C.S., and not under Clause (3) applicable to public utility corporations.

## SUMMARY

Motor bus and motor freight truck corporations ordinarily designated as common carriers under a certificate of public convenience and necessity issued by the Railroad Commission of Texas are required to pay a franchise tax as provided in Clause (1) of Article 7084, V.C.S., and are not entitled to pay this tax as a public utility as provided in Clause (3) of said article. It is within the province of the Legislature to declare what corporations constitute public utilities within the purview of Clause (3) of Article 7084, V.C.S., and unless designated and classified by the Legislature as public utilities, corporations may not avail themselves of the lesser tax liability imposed upon public utilities by this statute.

APPROVED:

W. V. Geppert
Taxation Division

C. K. Richards
Reviewing Assistant

Charles D. Mathews
First Assistant

Yours very truly,

PRICE DANIEL
Attorney General

By L. P. Lollar
Assistant

LPL:mw