## CONSUMERS LIGHT & POWER CO. v. PHIPPS.

No. 16769—Opinion Filed July 20, 1926.

Rehearing Denied Dec. 14, 1926.

**1. Corporation Commission—Jurisdiction of Commission and Courts Over "Public Business."**

Under section 11032, C. S. 1921, a business, which meets the requirements therein contained and specified, constitutes a "public business," irrespective of proceedings before the Corporation Commission or district court. The jurisdiction of the Corporation Commission and district court is confined to regulating or controlling "public business" as to its practices, prices, rates, and charges, and does not extend to decreeing or establishing a "public business."

**2. Same—What is a "Public Business."**

Whether a business constitutes a "public business," within the statutory definition thereof, depends on the facts in each particular case.

**3. Same — Discrimination—Uniformity of Price.**

At common law, recognized to be in force by section 11035, C. S. 1921, as to the operation of "public business," one engaged in "public business" is required to treat all persons fairly and without unjust discrimination, and to charge a reasonable and uniform price to all persons similarly situated or in the same class. Discrimination is authorized, when founded upon reason and

justice, such as when dealing with persons of different classes, or dissimilarly situated.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by James Phipps against Consumers Light & Power Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Rainey, Flynn, Green & Anderson, for plaintiff in error.

J. H. Harper, for defendant in error.

Opinion by JARMAN, C. The parties will be referred to as they appeared in the trial court. The plaintiff, James Phipps, commenced this action against the Consumers Light & Power Company, a corporation, to recover damages alleged to have been suffered by reason of unlawful discrimination against the plaintiff. Judgment was for the plaintiff in the sum of $656, from which the defendant brings error.

The evidence of the plaintiff discloses that during the years 1920 to 1923, he was engaged in the business of retailing ice and running a meat market at Addington; that the defendant was engaged in the business of manufacturing, selling, and distributing ice at Waurika; that the defendant furnished ice to certain consumers at Waurika, under contract, in lots of not less than 1,800 pounds at the rate of 32 1-2 cents per hundred; that such consumers, under their contract, were to purchase all of their ice from the defendant and to purchase the same at regular intervals throughout the entire year. and the ice so purchased by them was not to be retailed but to be used for the use of such customers. The plaintiff purchased ice from the defendant at Waurika, but was not obligated to purchase any given quantity of ice, nor did he agree to purchase all of his ice from the defendant nor to purchase ice for his use only. The plaintiff, on the other hand, purchased a portion of his ice from another company at Comanche, and ice that was purchased by the plaintiff from the defendant was retailed or resold by the plaintiff to his customers at Addington. The price paid by the plaintiff for ice purchased from the defendant was at the rate of 45 cents per hundred in lots of 1,800 pounds or more. All ice was delivered by the defendant to the plaintiff and other customers at its plant in Waurika. The plaintiff contended that he was entitled to recover from the defendant the difference between 45 cents per hundred and 32½ cents per hundred, for

the volume of ice purchased by him from the defendant during this period. At the conclusion of plaintiff's evidence the defendant demurred thereto, which was overruled. Thereupon, the defendant rested, and judgment was rendered for the plaintiff.

The first proposition urged by defendant is that it was engaged in a private business, and had the right to sell or to refuse to sell whomsoever it chose, and to fix different prices for sales of the same commodity to different persons. The correctness of this proposition depends on whether the defendant was engaged in a private business.

The defendant contends that, prior to the Act approved April 7, 1925, S. L. 1925, p. 226, declaring the manufacture, sale, and distribution of ice to be a public business, it was necessary that the business of the defendant be declared a "public business" by the Corporation Commission, or by a proper district court of the state, before the business of the defendant, which was the manufacture, sale, and distribution of ice, constituted a "public business," as provided by section 11032, C. S. 1921. No proceeding was ever had before the Corporation Commission or in any district court to subject the ice business of the defendant to the control of the Corporation Commission or the district court. We cannot agree with counsel that it was necessary that a hearing be had in the Corporation Commission or district court in order for the ice business of the defendant to be a "public business" within the purview of section 11032. Said section provides as follows :

"Whenever any business by reason of its nature * * * is such that the public must use the same, * * * or the commodities bought or sold therein are offered or taken by purchase or sale in such manner as to make it of public consequence or to affect the community at large as to supply, demand, or price, or rate thereof, * * * said business is a public business, and subject to be controlled by the state, by the Corporation Commission, or by an action in any district court of the state, as to all of its practices, prices, rates, and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business, to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

It is obvious, after carefully considering the language of said section, that it is not the subjecting of the business to control by the Corporation Commission or a district court that makes such business a "public

business"; but the business must be a "public business" before it can be controlled.

As to whether a business is a "public business" depends on whether it possesses "the qualities prescribed by section 11032—the statute defines and fixes the status of a "public business;" and the only authority vested in the Corporation Commission or district court is to regulate or control, not establish, a "public business." A business may constitute a "public business" regardless of whether the Corporation Commission or district court was ever resorted to; but if such "public business" is to be regulated or controlled as to its practices, prices, rates, and charges, it would become necessary to resort to the Corporation Commission or the district court.

Was the business of the defendant a "public business" within the purview of section 11032? An element of a "public business," as prescribed by said section, is that the business by its nature must be such that the public must use the same, or the commodities bought and sold in such manner as to affect the community at large as to supply, price, etc. As said by this court in the case of Oklahoma Power & Light Co. v. Corporation Commission, 96 Okla. 19, 220 Pac. 54:

"Ice is an article of common household necessity, the supply of which must ordinarily be purchased every day. * * *"

Being a household necessity, of which we will take judicial notice, ice is by its nature such a commodity that it must be used generally by the public. However, every person engaged in the ice business is not necessarily engaged in a "public business." This question must be determined by the facts in each particular case. A person engaged in the manufacture, sale, and distribution of ice to a restricted number of persons, or, for illustration, where a refrigerator company should take the entire output of the plant, would not be engaged in a "public business." A business which is private in fact cannot be made a "public business" by legislative declaration. As said by this court in the Oklahoma Light & Power Co. Case, supra:

"Bearing in mind the constitutional guarantee enjoyed by all persons engaged in any lawful business, ultimately the determination that a business is clothed with such a public interest as to justify regulation, it cannot be said to be a matter of legislative discretion only, but ulttimately is a judicial question."

In the instant case, however, the defendant admits in its amended answer "that at the time referred to in the plaintiff's peti-

tion, it (defendant) was engaged in the business of producing and selling ice in the city of Waurika to those who cared to purchase the same. * * * Therefore, the defendant was engaged in a "public business" as defined by section 11032.

Since the business of the defendant was not sought to be controlled by the Corporation Commission, or the district court, did the plaintiff have any other remedy with respect to discrimination practiced by the defendant? Section 11035, C. S. 1921, provides that:

"Nothing in this article shall abridge or alter any remedy now existing, either at common law or by statute, but the provisions of this article are in addition to such remedies."

From this section it is clear that the remedies afforded by section 11032, authorizing the regulation or control of a public business by the Corporation Commission or district court is merely cumulative to any remedy existing at common law. It is conceded that a person who is unlawfully discriminated against by one engaged in a "public business," may maintain an action at common law for damages suffered thereby. This rule authorized the plaintiff to maintain this action.

The second proposition urged by the defendant is that, assuming the defendant was engaged in a "public business," still, it had a right to charge different customers different rates dependent upon a reasonable classification of the same.

Under the common law, it was the duty of all persons engaged in a "public business" to treat all members of the public fairly and without discrimination and to serve all who are similarly situated, or in the same class, on equal terms and at reasonable rates. Section 11032 of our statutes is merely declaratory of the common law in that respect. This rule, requiring those engaged in a "public business" to render service to the public without discrimination, does not mean a uniformity of rates or prices for services rendered to the public. A "public business" cannot be required to charge the same rate for services rendered to different classes, or to people differently situated. The discrimination that is prohibited must be an arbitrary or an unjust discrimination. A mere difference in prices for a commodity furnished to different classes would not constitute an unjust discrimination. As said by Fletcher on Corporations, vol. 7, p. 7185:

"* * * It is only arbitrary discriminations that are unjust. If the difference in rates is

based upon a reasonable or fair difference in conditions which equitably and logically justifies a different rate, it is not an unjust discrimination. In fact, this question of discrimination narrows itself to a determination of whether discrimination, conceding it to exist, is just, i. e., based on reasonable grounds, or is unjust, i. e., merely arbitrary. There is no unjust discrimination if all persons similarly situated affected by like conditions and subject to like circumstances are given the same rate."

The same principle is announced in the case of Guthrie Gas Co. v. Board of Education, 64 Okla. 157, 166 Pac. 128, as follows:

"At the common law one engaged in a public calling was required to charge a reasonable and uniform price to all persons for like services where rendered under the same or similar circumstances, but special contracts were not entirely forbidden, and rates might be changed as conditions varied, and exceptions were permitted when special facts made them reasonable and just. No favoritism was allowed, but discrimination, founded upon reason and justice, was not unlawful."

In other words, one engaged in a "public business" may classify his customers and charge different rates to persons dissimilarly situated, or in different classes. In the instant case, the plaintiff was engaged in the business of retailing ice in the town of Addington, while the other customers of the defendant bought ice for their own consumption. In addition, the plaintiff was at liberty to purchase ice from any one he desired, and, in fact, did purchase a portion of his ice from a different company, whereas, the other customers, with whom the plaintiff contends that he was in the same class, were under contract to purchase all of their ice from the defendant. The plaintiff was at liberty to purchase such quantities of ice from the defendant as he saw fit, while other customers, in whose favor the plaintiff contends the defendant discriminated, were under contract to purchase in quantities of not less than 1,800 pounds, and to purchase at regular intervals throughout the entire year. No one could contend successfully that the plaintiff was similarly situated, and in the same class as the other customers of the defendant, and, such being the case, the defendant clearly had the right to make a different charge or rate for ice furnished to the plaintiff. There is no contention made here, and no evidence was introduced below to show, that the rate charged the plaintiff is not a reasonable rate.

The trial court erred in not sustaining the demurrer to plaintiff's evidence and rendering judgment for the defendant. The judgment of the trial court is reversed, and the cause remanded, with directions to dismiss plaintiff's action and render judgment for the defendant.

By the Court: It is so ordered.

Note.—See 9 C. J. p. 1106 (Anno).