Kevin A. Easley, Chief Executive Officer Grand River Dam Authority P.O. Box 409 Vinita, Oklahoma 74301-0409
Dear Mr. Easley:
The Attorney General has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May the Grand River Dam Authority ("GRDA") include a private entity as an additional insured on a GRDA insurance policy that has been purchased with public funds?
 BACKGROUND
The GRDA is a state agency organized to manage use of the waters of the Grand River in northeast Oklahoma, with the authority to generate, transmit and sell electric power and energy at retail and wholesale to entities and persons in its service area. 82 O.S. 2001 Supp.2007, §§ 861 — 890 [hereinafter GRDA Act]. In addition to its protection under the Governmental Tort Claims Act,[1] GRDA carries one or more "excess liability" insurance policies, required by the terms of GRDA's bond resolution, which provides for and secures issuance of the GRDA revenue bonds.[2] *Page 2 
In your Opinion request you informed us that GRDA has entered into a contract to furnish power to a large industrial concern ("Customer") in GRDA's service area ("Agreement"). See letter from Kevin A. Easley, Chief Executive Officer, Grand River Dam Authority, to Drew Edmondson, Oklahoma Attorney General (Oct. 12, 2007) (on file with author). You stated in your letter that the Agreement contains requirements that the Customer furnish GRDA an easement on which GRDA shall construct and install necessary transmission and substation facilities leading to the Customer's point of delivery, thus allowing GRDA to provide power to Customer's facilities. Id. You also stated in negotiating terms of the easement, the Customer has required that it be added to GRDA's excess liability policy as an additional insured. Id. In your Opinion request, you have advised that the insurer will not require an extra premium for adding the Customer as an additional insured. Id. GRDA's concerns over its lawful authority to provide such insurance coverage to the Customer is what gives rise to your question. See id.
 CONSTITUTIONAL ISSUES
Oklahoma Constitution Article X, Section 15 provides, in pertinent part:
 A. Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.
Id. Oklahoma Constitution Article X, Section14 further provides, in pertinent part:
 A. Except as otherwise provided by this section, taxes shall be levied and collected by general laws, and for public purposes only. . . .
Id. The Oklahoma Constitution, Article X, Sections 23 provides: "[t]he state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the state" without approval of a majority of voters at an election held for that purpose.Id.; see Okla. Const. art. X, § 25; Fent v. Okla. Capitol ImprovementAuth., 984 P.2d 200, 207-08 n. 7 (Okla. 1999); In re Okla. CapitolImprovement Auth., 958 P.2d 759, 771 (Okla. 1998). However, a statute or agreement that does not create a legal obligation extending beyond the current fiscal year or bind subsequent Legislatures to make appropriations in future years, does not create a "debt" in a constitutional sense. In re Okla. Capitol Improvement Auth.,355 P.2d 1028, 1031 (Okla. 1960).
Since GRDA generates its revenues from power sales and does not rely on legislative appropriations, GRDA obligations are not subject to the debt limitations of the Constitution. State ex rel. Kerr v. Grand RiverDam Auth., 154 P.2d 946, 950 (Okla. 1945). Nonetheless, the revenues generated by GRDA from the use of its generating and transmission facilities, although not "taxes," constitute public monies and must be used to accomplish "public purposes" under the Constitution. 82 O.S. Supp.2007, § 861A(A) ("All funds generated, received and expended by the district are public funds *Page 3 
and subject to state laws and regulations governing the receipt and expenditure of public funds in the same manner as all other state agencies."); see A. G. Opins. 00-1, at 4-6; 03-21, at 122; 63C Am. Jur. 2d Public Funds § 58 (West, Westlaw 2007) .
Your question involves whether or not: (a) GRDA has lawful authority to add a private party to a GRDA "excess liability" insurance policy; (b) there is valid consideration for GRDA listing the Customer as an "additional insured" on its insurance policy; (c) the addition of the Customer on the insurance policy satisfies the "public purpose" requirement of the Constitution; and (d) the addition of the Customer violates other requirements of applicable statutory or case law.
 THE "ADDITIONAL INSURED" ISSUE
A. Insurance.
To answer your question we must first address the nature of the transaction, i.e., adding the Customer (a private entity) to GRDA's liability insurance policy. "`Insurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." 36 O.S. 2001, § 102[36-102] (emphasis added);see Clardy v. Grand Lodge, 269 P. 1065, 1066 (Okla. 1928).
To "indemnify" another is to "save [or hold] harmless; to secure against loss or damage." Black's Law Dictionary 910 (Rev. 4th ed. 1968). "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." 15 O.S. 2001, § 421[15-421].
Thus, in purchasing its insurance policy GRDA has entered into a contract with an insurer ("Insurer") to protect itself from the legal (and financial) consequences of operating its electrical system in a manner that causes harm to another. The Insurer has agreed to hold GRDA harmless (up to a specified limit) in the event GRDA's operations cause harm for which GRDA is liable. Under this policy, as it is now written, the Customer (and other affected third parties) would be protected from harm resulting from GRDA's electric system operations.
The Customer is now demanding to be added to GRDA's insurance policy as an "additional insured." See letter from Kevin A. Easley, Chief Executive Officer, Grand River Dam Authority, to Drew Edmondson, Oklahoma Attorney General (Oct. 12, 2007) (on file with author). In essence, the Customer is asking that GRDA cause the Insurer to hold the Customer harmless from the Customer's actions which might harm another. GRDA is being asked not only to insure against consequences of its own actions that might cause loss to another, but also to cause the Insurer to indemnify for consequences of the Customer's actions. While the Customer contends its addition to the policy would only cover claims against it due to the actions of GRDA, it appears to us that such claims are already covered under the existing GRDA policy, and the only purpose for including the Customer as an "additional insured" on the policy would be to protect the Customer from harm caused by its own acts or those of its employees or agents. See Grand River Dam Authority, Res. No. *Page 4 
4800, § 6.08(a) . Through the mechanism of its excess liability insurance policy, GRDA would be indemnifying the Customer, a result that potentially violates several provisions of our Constitution, including the incurring of an open-ended, long-term obligation by a state agency without voter approval at an election.
The question of indemnification by a state agency of a private third party has recently been addressed in Attorney General Opinion 06-11. There we concluded a state agency may not enter into contracts holding private vendors harmless for their own negligence or wrongful acts, unless at the time the contract is executed funds have been appropriated and encumbered to pay for any contingent liability which might arise.Id. at 90. Absent such appropriation, we held such contract clauses are prohibited, by virtue of the creation of an open-ended obligation in violation of Okla. Const. art. X, § 23. Id.
By the nature of insurance policies, we do not believe that GRDA can contract by an insurance policy to pay for all contingent liability that might arise as a result of the Customer's actions. Insurance policies (including the GRDA policies in question) have stated limits, i.e., maximum amounts for which the Insurer agrees to be liable. See Grand River Dam Authority, Res. No. 4800, § 6.08(a); see, e.g., 36 O.S. Supp.2007, §§ 3636(B), 3639.3(A). Thus, we conclude that even with insurance GRDA cannot comply with the requirements of Attorney General Opinion 06-11 unless the Customer expressly agrees in writing to a "cap" on GRDA's liability.
Even with such an agreement to limit GRDA's liability to stated policy limits, there is a strong policy argument against state agencies adding private parties to insurance policies as "additional insured." Many states attorneys general have concluded "open-ended" indemnification of a private vendor or other contract party by a state agency is unenforceable on public policy grounds. See A. G. Opin. 06-11, at 80.
The Attorney General in Florida concluded in an opinion that a county may not agree to purchase insurance to cover claims arising from a contract and name the contracting party as an additional insured or, alternatively, pay additional funds to the contracting party to purchase such insurance, concluding that to do so would, in effect, (i) unlawfully waive the state's sovereign immunity, (ii) exceed the powers granted by statute to county officials, and (iii) violate public policy. Fla. Op. Att'y Gen. 2000-22, 2000 WL 347547, at *1.
While GRDA has authority to purchase property and liability insurance (see 82 O.S. Supp.2007, §§ 862(p), 870), Section 862 of the GRDA Act further provides: "Nothing in this act shall be construed as rendering the district liable for damage where it is not liable on general principles of law or statute or Constitutional provision." Id. § 862(s). This language closely follows the statute cited by the Florida Attorney General when he said, "[t]he plain language of the statute limits the procurement of insurance for the coverage of claims, judgments and claims bills for which the governmental entity may be liable to pay." Fla. Op. Att'y Gen. 2000-22, 2000 WL 347547, at *3. *Page 5 
Another indication of the Legislature's intention that GRDA not indemnify other parties is found in Section 862(g), pertaining to GRDA's participation with other public or private entities in the joint ownership of electric generating plants, where the statute provides: "In carrying out the powers granted in this section, the district and each participant shall be severally liable only for its own acts and not jointly or severally liable for the acts, omissions or obligations of others." Id.
Thus, we conclude on public policy grounds, as well as the potential of violating Okla. Const. art. X, § 23, that GRDA may not lawfully undertake to indemnify another party to a contract. While A. G. Opin. 06-11 leaves open the possibility that a state agency might indemnify a private vendor if, at the time of executing the contract, it appropriates and encumbers money with which to fully satisfy the potential obligation, we do not believe an insurance policy can satisfy this requirement, since there will always be the possibility of liability over and above policy limits.
B. Public Purpose.
Generally, Okla. Const. art. X, §§ 14(A) and 15(A), read together, require that the expenditure of public funds must be in furtherance of a public purpose, and must not be a "gift." See also A. G. Opin. 03-35, at 200. "Public purpose" has been held by the Oklahoma Supreme Court to be synonymous with "government[al] purpose." State ex rel. Lacy v.Jackson, 682 P.2d 218, 220 (Okla. 1983).
With regard to the "gift" prohibition in Okla. Const. art. X, § 15, a gratuitous transfer of property of the State, made voluntarily and without consideration, is a prohibited "gift." See Childrens Home Welfare Ass'n v. Childers, 171 P.2d 613, 614 (Okla. 1946). However, where the State receives property or services in return for payment of its money, even though such payment is voluntary in the sense that the contract under which money was paid was voluntarily entered into, it is not a prohibited "gift." Id. Nevertheless, the expenditure of public funds requires accomplishment of a governmental purpose with appropriate controls over activities of the private entity receiving payment.Way v. Grand Lake Ass'n, 635 P.2d 1010, 1018 (Okla. 1981).
It is difficult to identify a valid governmental purpose in the proposed transaction. There is no indication that GRDA will have any authority or control over the activities of this Customer, any more than it has over its other customers. We are advised that GRDA has never included electrical customers (public or private) as an "additional insured" on any of its insurance policies. Why would GRDA be justified in adding the Customer as an additional insured to its policy in this case?
Granted, there is competition between GRDA and other providers in the area for large commercial power customers. But, if the GRDA Board cannot identify specific reasons for different treatment of this Customer, it is submitted that a court likely would find sufficient governmental purpose lacking here. See Veterans of Foreign Wars v. Childers,171 P.2d 618, 622-23 (Okla. 1946). In the words of the court:
 [P]ublic money may not be appropriated to a private corporation or organization, operating entirely without governmental supervision or control, no matter how *Page 6 
wholesome may be the purpose or function of such organization nor how beneficial its activities may be to that portion of the public with which it comes in contact.
Id. at 623.
C. Consideration.
The GRDA sells electric power and energy, both wholesale and retail, to dozens of customers, including sales to municipalities for resale to individual consumers, and sales to industrial and commercial customers. In all these instances, GRDA must have a system for delivering the electricity to the customer, i.e., electric transmission and distribution lines, poles, switches, transformers, meters and the like. Further, in all these situations, GRDA gains access to the customer's business or facilities via a written contract or agreement whereby the customer grants use of its property for GRDA to run lines and install meters to the customer's point of delivery.[4]
The service agreements between GRDA and all its various customers have several features in common: (1) GRDA agrees to provide the customer with electric power and energy subject to prescribed conditions; and (2) the customer agrees to (i) pay for the electric service delivered by GRDA, and (ii) allow GRDA access to the customer's point of delivery in order to build and/or maintain GRDA's delivery facilities. Whether or not this agreement to allow access is deemed an "easement" is not material to our analysis.
Obviously, the service contracts establish rights and duties of both GRDA and the customer. A written contract is "presumptive evidence of a consideration." 15 O.S. 2001, § 114[15-114]. Further, we conclude that the approval of the form of the service contract (and the accompanying terms and conditions of service) by GRDA's governing body amounts to an approval by GRDA of the adequacy of consideration. Where an agency's governing (or legislative) body determines that sufficient consideration exists for a contract, great weight is given by courts to such determination. See In reUniv. Hosp. Auth., 953 P.2d 314, 320 (Okla. 1997) (citing Burkhardt v. City of Enid, 771 P.2d 608 (Okla. 1989)). Thus we cannot say, as a matter of law, that a given GRDA contract lacks consideration. *Page 7 
In the present instance, however, the Customer has made a further demand that GRDA name the Customer as an additional insured in its "excess liability" insurance policy, in consideration of the Customer granting to GRDA an easement for placement and operation of GRDA's lines, substation and metering facilities. See letter from Kevin A. Easley, Chief Executive Officer, Grand River Dam Authority, to Drew Edmondson, Oklahoma Attorney General (Oct. 12, 2007) (on file with author). This demand is subsequent to execution of the service agreement, which does not recite this requirement as part of the contract, and thus amounts to an offer by the Customer to amend the basic contract. "A qualified acceptance [amounts to] a new proposal" for contract. 15 O.S. 2001, § 71[15-71]; see also Young v. Roller, 201 P.2d 793,796 (Okla. 1948). Whether GRDA's governing body will accept the new proposal is as yet undetermined, and at any rate involves questions of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).[3]
D. Other Legal Requirements.
The GRDA is required to be nondiscriminatory in its dealings with customers. 82 O.S. 2001, § 868[82-868]. In addition to its being designated as a state agency and thus being required to serve the public good, GRDA is expressly required, in the conduct of its affairs, to "consider the rights and needs of the people living within . . . the district." 82 O.S. Supp.2004, § 862(s). At common law, one engaged in "public business" is required to treat all persons fairly and without unjust discrimination. Discrimination is authorized when founded on a reasonable basis, such as when dealing with persons of different classes or dissimilarly situated. Consumers' Light Power Co. v. Phipps,251 P. 63, 65 (Okla. 1926). The requirement that one engaged in a public business must not discriminate among customers similarly situated has long been applied, regardless of whether or not the business is a regulated one.[5] *Page 8 
There is no showing by the Customer or by GRDA why the Customer should be the only one to whom the privilege of being included as an "additional insured" on a GRDA insurance policy is extended. If the Customer is to be included as an "additional insured" but cannot show it is in a class of customers differently classified from others similarly situated, our conclusion is that GRDA is prohibited from engaging in such discrimination. *Page 9 
 It is, therefore, the official Opinion of the Attorney Generalthat:
 1.Generally, the State or a state agency cannot lawfully agree to indemnify a private contractor. Okla. Const. art. X, §§ 15, 23; A. G. Opin. 06-11.
 2. No public purpose would be accomplished by the Grand River Dam Authority ("GRDA") agreeing to cause its insurer to indemnify a specific customer for such customer's own negligence or wrongful acts while not indemnifying other GRDA customers, particularly where GRDA exercises no control over the customer's activities. Okla. Const. art. X, § 14; Way v. Grand Lake Ass'n, 635 P.2d 1010, 1018 (Okla. 1981).
 3. Without appropriate controls and the lack of a valid public purpose, causing an insurer to add a private person or entity to a state insurance policy as an "additional insured" would be a gift in violation of Okla. Const. art. X, § 15. See Veterans of Foreign Wars v. Childers, 171 P.2d 618, 622-23 (Okla. 1946).
 4. The GRDA may not discriminate among its customers, absent a showing that a rational basis exists for such special treatment or classification. 82 O.S. 2001, § 868[82-868]; Consumers' Light Power Co. v. Phipps, 251 P. 63, 65 (Okla. 1926).
 5. The GRDA may not include a private entity as an additional insured on an insurance policy purchased with public funds. Such result is required under applicable constitutional and statutory provisions requiring public funds to be expended only for public purposes, prohibiting the making of gifts to private entities, and requiring GRDA to conduct its operations in a nondiscriminatory manner. Okla. Const. art. X, §§ 14, 15, 23; Veterans of Foreign Wars, 171 P.2d at 622-23; 82 O.S. Supp.2007, §§ 862, 868; Consumers' Light Power Co., 251 P. at 65.
W.A. DREW EDMONDSON Attorney General of Oklahoma
LYNN C. ROGERS Assistant Attorney General
[1] See 51 O.S. 2001 Supp.2007, §§ 151 — 200. Under the Governmental Tort Claims Act the limit on liability of the State or a state agency for a single occurrence or accident is one million dollars ($1,000,000) [hereinafter Tort Limit]. 51 O.S. Supp.2007, § 154(A)(3).
[2] "Excess liability" is liability over and above the Tort Limit prescribed by the Governmental Tort Claims Act, described in footnote 1. These excess liability insurance policies, with coverage limits in excess of $20 million, generally cover liability for construction, operation and maintenance of GRDA's electrical generation, transmission and distribution system. For example, liability for death, personal injuries or property damage resulting from negligent operation of GRDA's electrical system would be covered. Under Section 6.08(a) of GRDA's Resolution 4800, the general bond resolution authorizing and securing GRDA revenue bonds issued from time to time to finance GRDA projects, GRDA has covenanted to procure and maintain property and liability insurance in such amounts as are "usually carried by electric utilities operating similar systems." Grand River Dam Authority, Res. No. 4800, Providing for the Issuance of Revenue Bonds, Mar. 6, 1987. For purposes of this Opinion, we assume that money used by GRDA for purchase of the policy is "public money," and that GRDA is authorized under the GRDA Act, Section 870 of Title 82 to purchase such policy of insurance.
[3] Standardized GRDA forms of contracts and terms and conditions of service to municipal, industrial and commercial customers are on file with the GRDA. Our review of these leads us to conclude that each agreement contains a covenant that GRDA shall have reasonable access to a point on the customer's property where the customer takes delivery of the electric power.
[4] Based on the authorities cited herein, unless:
 (1) the GRDA Board should make a specific determination that adding the Customer to its insurance policy as an "additional insured" serves a public purpose under the rationale of Veterans of Foreign Wars, 171 P.2d at 622-23;
 (2) the Customer should agree to limit its claims as an additional insured to the coverage limit of the excess liability policy, and not seek indemnification against GRDA over and above such limit; and
 (3) the GRDA Board should determine to follow a strict policy of nondiscrimination, either by adding all its existing customers as "additional insureds" on its insurance policies, or by finding, based on rational grounds, that the Customer should be classified in a unique category, thus justifying its treatment as an additional insured in contrast to other customers;
which we believe to be an exceedingly unlikely combination of events, then we conclude GRDA cannot lawfully include the Customer as an additional insured on its excess liability insurance policy. However, this is a decision for the GRDA Board to make, based on applicable law and all applicable facts and circumstances.
[5] See id. (unregulated ice house); Hargrave v. Canadian ValleyElect. Coop., 792 P.2d 50, 59 (Okla. 1990) (unregulated rural electric cooperative); State v. Okla. Gas Elec. Co., 536 P.2d 887, 891 (Okla. 1975) (regulated electric utility).